IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| PAUL ALBO, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:12-CV-0066 |
| | § | |
| CAROLYN W. COLVIN, | § | |
| Acting Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

**REPORT AND RECOMMENDATION**
**TO REVERSE DECISION OF THE COMMISSIONER and**
**REMAND FOR FURTHER PROCEEDINGS**

Plaintiff PAUL ALBO brings this cause of action pursuant to 42 U.S.C. § 405(g), seeking review of a final decision of defendant CAROLYN W. COLVIN, Acting Commissioner of Social Security (Commissioner), denying plaintiff's application for disability insurance benefits (DIB). Both parties have filed briefs in this cause. For the reasons hereinafter expressed, the undersigned United States Magistrate Judge recommends the Commissioner's decision finding plaintiff not disabled and not entitled to benefits be REVERSED.

I.
THE RECORD[1]

Plaintiff served in combat with the Marine Corps during the Vietnam war from 1966 to 1970. (Tr. 39; 283; 358). In the early 1970s, plaintiff had three (3) back operations. (Tr. 45). At

---

[1] Plaintiff was last insured for benefits through March 31, 2007. (Tr. 15). Therefore, the relevant time period in this case was April 14, 2005, plaintiff's onset date, to March 31, 2007. Plaintiff was 59 years old on the date he was last insured.

SS\R&R\ALBO-66.REV-STEP4:2

some point, apparently in 2001, plaintiff was granted a service-connected disability pension by the Veterans Administration (VA).[2] The record, however, does not contain the VA disability determination reflecting the "Reasons and Bases" upon which disability was granted. The record simply contains general references to a "100% SC" disability rating and attributes or appears to attribute the rating to plaintiff's history of post-traumatic stress disorder (PTSD).[3] (Tr. 236; 239; 338; 345; 346; 352; 353; 355; 358; 365; 366). On March 31, 2003, plaintiff stopped working. (Tr. 122, 130-39; 146). Plaintiff indicated to health care providers that he was unemployed due to PTSD. (Tr. 195; 210; 215; 243).

As relevant, medical records prior to plaintiff's onset date reflect, *inter alia*, a July 25, 2002 GAF assessment of 40 (Tr. 286), a June 2003 request for treatment for PTSD noting symptoms of re-experiencing, avoidance and increased arousal (Tr. 286), a September 2003 notation that plaintiff was not on medication for his PTSD, was "doing ok, [with] good and bad days," had no problem with impulse control but did have trouble sleeping. (Tr. 310-11), and a February 2004 eyelid lift surgery. (Tr. 293-300; 317-22).

On April 14, 2005, plaintiff's alleged onset date, plaintiff reported to a VA mental health provider that he had experienced trouble sleeping for years, suffered from depression for extended periods of time, but advised he did not want to take medication on an ongoing basis. Plaintiff's assessment included chronic PTSD and recurrent Major Depression (with symptoms of subjective depression and sleep disturbance), with a GAF score of 45. Plaintiff was issued a prescription to

---

[2] Plaintiff testified he received a 100% disability rating from the VA based on his PTSD in "[t]wo thousand something." (Tr. 36). A June 30, 2003 progress note references a full MHA by a Dr. Vosburgh on October 10, 2001. (Tr. 286).

[3] A December 14, 2004 Compensation and Pension Examination references a March 15, 2002 denial of benefits for service-connected hearing loss, finding plaintiff was not unemployable due to hearing loss and that the evidence did not reflect plaintiff's hearing loss was service-connected. (Tr. 282; 285).

take at bedtime for sleep and nightmares on a trial basis. (Tr. 281). In November 2005, a consult was ordered for plaintiff's PTSD and it was noted that plaintiff was being followed by the VA Mental Health Clinic for depression. (Tr. 245). On January 4, 2006, during the mental health consult, screening appeared to be positive for PTSD, for which plaintiff had already been diagnosed. (Tr. 232-33). Plaintiff reported continued PTSD symptoms such as sleep impairment, anxiousness, and hypervigilance, although he reported he had never been on medications. (Tr. 239). Testing based on plaintiff's self-report revealed plaintiff's anxiety was at the low end of moderate to severe, and that his depression was at the low end of severe. (Tr. 233-35). Plaintiff reported coping skills of watching movies, walking and reading novels. (Tr. 236). Clinical testing revealed good eye contact, fair concentration, insight and memory, and good attention, and plaintiff reported he did all of his activities of daily living independently. (Tr. 237-39). Plaintiff was diagnosed with PTSD, assessed a GAF score of 55, and was prescribed medication for sleep and nightmares. (Tr. 240-41). In March 2006, plaintiff reported he was feeling good. (Tr. 228). In August 2006, he reported his nightmares and sleep had not significantly improved, only getting 8 hours of sleep about twice a week, and that he felt tired all the time. (Tr. 224). Plaintiff reported his son was living with him, that he felt depressed when he was not busy, was on an exercise program, and liked to read. The psychiatrist found plaintiff was doing better 50% of the time and increased plaintiff's medication for sleep. In December 2006, plaintiff had an episode of Bells palsy on the right side of his face, possibly due to a viral infection of the inner ear, but reported he was free of pain and other complaints. (Tr. 218-22).

     Medical records dated after plaintiff's last insured date (March 31, 2007) but prior to the hearing reflected the increase in medication was helping plaintiff get enough sleep and that his

mood had leveled out. (Tr. 197). Plaintiff reported he was working out, worked outside, was "free of pain with no complaints," took care of his sister for two (2) months after she had a heart attack, had a recurrence of Bells palsy, and had moved into an apartment with his then 18-year-old son. (Tr. 194-218).

On February 28, 2009, plaintiff filed an application seeking disability insurance benefits with an alleged onset date of March 31, 2003.[4] (Tr. 122-25). Plaintiff amended his claimed onset date to April 14, 2005. (Tr. 172). Plaintiff alleged his ability to work was limited due to the following conditions: PTSD, depression, anxiety, bipolar disorder, chronic back pain, sleeping problems, and concentration and focusing problems. (Tr. 146). Plaintiff alleged the conditions limited his ability to work because he cannot "concentrate on a job" and "cannot remember things." (Tr. 146). Plaintiff explained he stopped working March 31, 2003 because he "couldn't remember things. . .was drinking a lot," and that he "left the job, couldn't cope with it." (Tr. 146). Plaintiff noted he completed the 11th grade in school, and identified his past work as a housekeeper/cleaner, food worker, and delivery truck driver. (Tr. 59).

In 2009, the Social Security Administration denied benefits initially and upon reconsideration.[5] (Tr. 64-65; 74; 77; 264; 270-71). In a Disability Report on appeal completed April 17, 2009, plaintiff described how his condition prevents him from working:

> [Plaintiff] suffers from severe back pain and he can not walk or stand for longer than 10 minutes. He has PTSD and suffers from nightmares. [Plaintiff] is depressed and

---

[4] A prior application for disability benefits was denied June 27, 2007. (Tr. 30; 143; 172).

[5] A Psychiatric Review Technique identified an anxiety-related disorder and PTSD but determined there was insufficient evidence to support functional limitations prior to the date plaintiff was last insured. (Tr. 250; 260; 262). A physical analysis/ assessment of plaintiff's case also determined there was insufficient evidence to support plaintiff's allegations of disabling back pain prior to the date plaintiff was last insured. (Tr. 264). On both initial review and reconsideration, the SSA determined plaintiff's primary diagnosis was "anxiety related disorders." On reconsideration, the SSA identified a secondary diagnosis of "posttraumatic syndrome."

has high anxiety. He can not focus or concentrate for longer than 10 minutes. (Tr. 153). Plaintiff also indicated he cannot "take care of his personal needs," "sleep at night," or "socialize with others," averred "[i]t is difficult for him to do simple things such as grocery shop or clean," and explained "[h]e is very depressed and has high anxiety." (Tr. 156). Plaintiff advised he is in constant pain, cannot walk or stand for longer than 10 minutes, cannot bend down or stoop, or lift more than 8 or 9 pounds. (Tr. 156). Plaintiff averred he cannot be around other people due to anxiety and panic attacks. (Tr. 156).

In a Disability Report on appeal completed July 1, 2009, plaintiff advised he suffers from chronic back pain, has Bell's palsy and cannot control his facial muscles, has severe depression and PTSD, cannot sleep during the night due to pain and depression, and has anxiety prohibiting him from being around other people. (Tr. 166). Plaintiff indicated he cannot socialize with other people, cannot handle any type of stress or change in routine, and cannot bend down or stoop. (Tr. 169). Plaintiff advised he is in constant pain, cannot walk or stand for longer than 10 minutes, has to rest for up to 3 or 4 hours per day, cannot focus or concentrate for longer than 15 minutes, and cannot lift more than 8 or 9 pounds. (Tr. 169).

An administrative hearing was held before an Administrative Law Judge (ALJ) on July 15, 2010. (Tr. 26-63). The records supplied to the ALJ prior to the hearing included the above-cited references in the medical records to plaintiff's "100% SC" disability rating. In his opening statement, plaintiff's counsel requested the ALJ evaluate plaintiff's claims under Listing 12.06 for anxiety related disorders and, in the alternative, to consider his claim under Rules 201.02 and 202.02 of the Grid. (Tr. 30).

In his decision, the ALJ summarized plaintiff's testimony at the hearing as follows:

He has an 11th grade education and went to special classes for history and math. He reads the newspaper and books and does basic math functions.

He is unable to maintain employment due to having difficulty relating to others and wanting to be alone or with only small groups. He was diagnosed with PTSD with a 100% disability rating from the Veterans Administration. He sees a mental health professional every three months. He is "OK" as long as he takes his medication, which occasionally causes nausea when he fails to eat. His mental disorder has improved since 2005.

He also has back pain and underwent two lumbar fusion surgeries in the early 1970's, and he has been diagnosed with arthritis in that regard. He has intermittent, radiating lower back pain when lifting or bending the wrong way, and it affects his ability to stand or sit for long periods. He has no particular difficulty climbing stairs, and he can lift about 10 pounds. His back problem has not changed since 2005.

He resides alone or with family members, and he does some shopping and housework. He enjoys playing cards, visiting with family members, going out for coffee, and swimming in a pool with family members, and he recently vacationed in San Antonio. He also attends church occasionally.

Plaintiff opined that PTSD and his back pain are the main reasons he is not able to work. (Tr. 54). The ALJ attempted to limit plaintiff's testimony to his limitations that existed after his onset date in 2005 and did not specifically question plaintiff concerning the VA disability rating.

At the hearing, the vocational expert (VE) identified plaintiff's past work as a grocery bagger, housekeeping cleaner, fast food worker, and delivery truck driver. (Tr. 59). The ALJ posed a hypothetical to the VE of a 57-year-old male, with an 11th grade education, with plaintiff's past work history, with no exertional limitations, but restricted to a position where there's only occasional public contact and simple job tasks. Based on the hypothetical, the VE testified plaintiff would be able to return to his past work of housekeeping cleaner. (Tr. 59-60). The VE further testified that plaintiff would still be able to perform that type of work if he was limited to light work. (Tr. 60). The VE testified, however, that if plaintiff has difficulty maintaining attention and

concentration for a 2-hour block, he would not be able to return to any of his past work. The VE further testified that if plaintiff needed to lie down or recline for longer than the standard number of breaks, he would not be able to return to any of his past work. (Tr. 60-61). Additionally, the VE testified that if plaintiff were limited to sedentary work, he would not be able to perform the work of housekeeping cleaner. (Tr. 61).

Plaintiff supplemented the record post-hearing with medical reports dating from September 9, 2009 through July 9, 2010 to show a continuing disability. (Tr. 29; 323-367).

On October 21, 2010, the ALJ rendered an unfavorable decision, finding plaintiff not disabled and not under a disability as defined by the Social Security Act at any time from April 14, 2005, his alleged onset date, through March 31, 2007, the date plaintiff was last insured. (Tr. 13-22). The ALJ found plaintiff had not engaged in substantial gainful activity since his alleged onset date. (Tr. 15). The ALJ determined plaintiff had a severe medical impairment of PTSD.[6] The ALJ determined, however, that plaintiff's impairment or combination of impairments did not meet or equal any listed impairment.[7] (Tr. 16). The ALJ found that, through the date last insured, plaintiff retained the residual functional capacity (RFC) – the most an individual can still do after considering the effects of physical and/or mental limitations that affect the ability to perform work-related tasks – to perform a restricted range of work at all exertional levels, limited to "simple jobs requiring only occasional public contact." (Tr. 17). Based upon his RFC finding and upon the testimony of the VE, the ALJ found plaintiff is able to perform his past relevant work as a

---

[6]The ALJ noted he considered plaintiff's statements that he had a hearing deficit, but found the objective evidence showed his hearing was within normal limits. (Tr. 16).

[7]The ALJ found no basis for a finding of listing-level severity based upon plaintiff's testimony that his symptoms of mental impairment had improved with medication, and that evaluation of statutory criteria showed plaintiff had no more than moderate limitations and was able to function independently. (Tr. 16).

housekeeping cleaner as the job is ordinarily required by employers throughout the national economy. (Tr. 21). Accordingly, the ALJ determined plaintiff was not under a disability, as defined by the Act, at any time from April 14, 2005, his alleged onset date, through March 31, 2007, his date last insured (Tr. 22).

Upon the Appeals Council's denial of plaintiff's request for review on January 25, 2012, the ALJ's determination that plaintiff was not under a disability during the relevant time period became the final decision of the Commissioner. (Tr. 1-3). Plaintiff now seeks judicial review of the denial of benefits pursuant to 42 U.S.C. § 405(g).

## II.
## STANDARD OF REVIEW

In reviewing disability determinations by the Commissioner, this Court's role is limited to determining whether substantial evidence exists in the record, considered as a whole, to support the Commissioner's factual findings and whether any errors of law were made. *Anderson v. Sullivan*, 887 F.2d 630, 633 (5th Cir. 1989). To determine whether substantial evidence of disability exists, four elements of proof must be weighed: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history. *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (citing *DePaepe v. Richardson*, 464 F.2d 92, 94 (5th Cir. 1972)). If the Commissioner's findings are supported by substantial evidence, they are conclusive, and the reviewing court may not substitute its own judgment for that of the Commissioner, even if the court determines the evidence preponderates toward a different finding. *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980). Conflicts in the evidence are to be resolved by the Commissioner, not the courts, *Laffoon v.*

*Califano*, 558 F.2d 253, 254 (5th Cir. 1977), and only a "conspicuous absence of credible choices" or "no contrary medical evidence" will produce a finding of no substantial evidence. *Hames v. Heckler*, 707 F.2d at 164. Stated differently, the level of review is not *de novo*. The fact that the ALJ <u>could</u> have found plaintiff to be disabled is not the issue. The ALJ did not do this, and the case comes to federal court with the issue being limited to whether there was substantial evidence to support the ALJ decision.

## III.
## ISSUE

Plaintiff raises a single ground for reversal of the acting Commissioner's decision denying plaintiff Social Security disability benefits:

> The ALJ erred in failing to give proper weight to the 100% disability rating by the Veteran's Administration in reaching his decision.

## IV.
## MERITS

### A. *The ALJ's Decision*

In his administrative decision, under the section related to the ALJ's RFC finding, the ALJ stated:

> My finding regarding the claimant's residual functional capacity is supported by the objective medical evidence and the claimant's medical treatment history. The claimant carries a 100% service-connected disability rating for PTSD from the U.S. Department of Veterans Affairs. Even so, in September (prior to his alleged disability onset date), claimant stated that he was 'doing OK' and was not taking any medication.

The ALJ then detailed the mental health medical records from plaintiff's onset date of April 14,

2005 to his date last insured of March 31, 2007:

> In April 2005 . . . [plaintiff] presented with symptoms of depression and stated that he had difficulty sleeping, but I note that he did not want to take medication on an ongoing basis. In January 2006, he presented for an initial evaluation by a new VA facility with sleep impairment, anxiousness and hypervigilance. Despite these symptoms, he stated he was able to complete all of his activities of daily living independently and that he was taking no medications. He reported having concentration deficit, but also stated that he enjoyed watching movies and reading novels. Based on the initial evaluation, he was provided a relatively high Global Assessment of Functioning (GAF) rating of 55. He was prescribed medication for his symptoms, and by August 2006, he reported that he was doing better 50% of the time regarding his PTSD and that he had no side effects to his medication.

The ALJ then noted he evaluated plaintiff's mental impairments under Section 12.00 of the Listings, finding plaintiff's mental impairment most closely resembled Listing 12.06, Anxiety-Related Disorders. (Tr. 18). The ALJ concluded plaintiff's symptoms corresponded to the "A" criteria which medically substantiated the presence of a mental impairment.

The ALJ then detailed his evaluation of plaintiff's mental impairment under the "B" criteria.[8] (Tr. 18-19). The ALJ concluded plaintiff had only mild limitations in his daily activities due to mental impairment, and no evidence of "marked" limitations in that area, *e.g.*, he had not had serious difficulties performing daily activities without direct supervision or in a suitable manner. The ALJ concluded plaintiff had only moderate limitations in his social functioning due to mental impairment, and no evidence of "marked" limitations in that area, *e.g.*, he had not exhibited highly antagonistic, uncooperative, or hostile behavior. The ALJ found plaintiff has had only moderate limitations in the area of concentration, persistence or pace, and no evidence of "marked" limitations in that area, *e.g.*, the inability to complete tasks without extra supervision or assistance.

---

[8]The ALJ also detailed the medical records relating to plaintiff's allegation of a back impairment and associated pain from the relevant time period, as well as the period subsequent to the expiration of plaintiff's disability insured status, finding that during the adjudicative period, plaintiff's back pain did not limit his ability to perform basic work-related functions and was not severe. (Tr. 18).

The ALJ found no evidence of episodes of decompensation or of "repeated" episodes that would be incompatible with the ability to do any gainful activity. The ALJ also found no basis to suggest plaintiff's mental impairment met the "C" criteria. On the basis of his evaluation, the ALJ concluded plaintiff's mental impairment did not result in two or more of the "marked" or "repeated" limitations within the "B" criteria guidelines and did not meet the "C" criteria. (Tr. 19).

     The ALJ further noted, however, that his RFC assessment reflected nonexertional limitations. The ALJ summarized plaintiff's hearing testimony, noting that while plaintiff states his mental impairment has improved and is controlled with medication, including medication for depression with no side effects, he continues to experience PTSD symptoms. (Tr. 20). The ALJ noted that despite such symptoms, plaintiff had enjoyed a moderate range of daily activities and, given such daily activities, found no support for his testimony regarding specific nonexertional limitations. (Tr. 20-21). The ALJ found plaintiff's credibility was called into question because his statements and testimony suggested his impairments affect his functional limitations more than indicated by the medical evidence alone, and because his symptoms could have been controlled sooner except for his noncompliance in taking prescribed medication. The ALJ concluded plaintiff's symptoms have no substantial affect on his ability to work beyond the functional limitations and restrictions indicated by the medical evidence. (Tr. 21). "Turning to the medical evidence," the ALJ found plaintiff's exertional and nonexertional capabilities were compromised, but not to the degree alleged, *i.e.*, an inability to work in any capacity. The ALJ noted that in March 2009 and May 2009, the state agency medical consultants determined plaintiff had limitations relating only to his mental impairment. The ALJ found these opinion were well supported by the evidence as a whole and warranted substantial weight. The ALJ noted he "provided appropriate mental limitations consistent with the most liberal interpretation" of plaintiff's impairments and

symptoms.  (Tr. 21).

The ALJ then detailed his determination that from April 14, 2005 through March 31, 2007, plaintiff could have performed his PRW as a housekeeping cleaner and determined plaintiff was not under a disability during this time period.  The ALJ did not make any additional references to the VA disability rating in his decision.

### B.  *The VA Rating*

All parties agree plaintiff was found to have a 100% service-connected disability from the Veterans Administration because of his PTSD.  While no party disputes that disability rating, the administrative record is silent with respect to the facts relied upon by the VA in determining plaintiff was disabled.  Neither the rating itself nor any of the paperwork associated with the rating are in the administrative record.  Consequently, the ALJ could not, in reaching the determination of non-disabled, have analyzed and rejected the evidence used by the VA in finding plaintiff disabled.  The absence of the VA disability rating and the basis for it requires that the defendant Commissioner's determination of not disabled be reversed and the case remanded for consideration of the VA 100% disability rating.

Defendant correctly argues that a VA rating of total and permanent disability is not legally binding on the Commissioner because the criteria applied by the two agencies is different.  *See* 20 C.F.R. § 404.1504 ("[A] determination made by another agency that you are disabled ... is not binding on [the SSA]."). While not binding, a VA rating <u>is</u> evidence that must be considered by the ALJ[9] and is entitled to a "certain amount of weight." *Chambliss v. Massanari*, 269 F.3d 520, 522

---

[9] An ALJ's failure to "mention" a claimant's VA disability rating is error. *See Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000) (ALJ did not mention VA rating). *Cf. Rich*, *supra* at *3 (ALJ did not even mention VA rating); *Arebalo v. Astrue*, No. 4-09-CV-0496-A, 2010 WL 6571087 at *3 (N.D. Tex. Oct.7, 2010), *rec. adopted*, 2011 WL 1633137 (N.D. Tex. April 29, 2011)

(5th Cir. 2001); *see also* SSR 06-03p, 2006 WL 2329939 at *6 (S.S.A. Aug. 9, 2006) ("[E]vidence of a disability decision by another governmental or nongovernmental agency cannot be ignored and must be considered."). A VA disability determination is entitled to "great weight" in most cases, however, the relative weight to be given to the determination varies depending upon the factual circumstances of each case. *Id.* Thus, while an ALJ need not give "great weight" to a VA disability determination, if he declines to do so, he must adequately explain the valid reasons for not doing so. *Id.* "An ALJ may ultimately disagree with the findings of the VA if the findings and the underlying evidence are considered." *Welch v. Barnhart*, 337 F.Supp.2d 929, 935 (S.D. Tex. 2004); *see also* SSR 06-03p (adjudicator should explain the consideration given to disability decisions by other agencies). The failure to follow this rule is legal error requiring reversal. *See Rich v. Astrue*, No. 3-10-CV-2064, 2011 WL 6606651 (N.D. Tex. December 22, 2011) (citations omitted). However, "[w]here the ALJ disagrees with the VA's disability findings, there is no reversible error as long as the record reflects consideration of those findings." *Welch v. Barnhart*, 337 F.Supp.2d at 935.

Defendant argues the ALJ specifically noted the VA disability rating and gave reasons for rejecting it. While the ALJ did, in fact, acknowledge plaintiff's 100% VA disability rating and even gave reasons for his determination that the medical evidence before him did not justify a 100% social security disability rating, the ALJ did not review, consider, and analyze the specific evidence used by the VA to reach their disability determination. In addition, the ALJ's stated reasons for rejecting the VA disability rating are conclusory. For example, the ALJ reviewed the VA treatment records subsequent to plaintiff's 2001 disability determination and referenced in his decision that plaintiff had reported he was "doing okay," and was not taking any medication for his PTSD. The

---

(ALJ wholly failed to mention VA rating).

specific record cited by the ALJ (Tr. 311), however, presents as many questions as it answers. First, there is no indication in that report as to what the term "doing okay" meant and it appears to be the caregiver's entry of plaintiff's condition rather than being a quote from plaintiff. Secondly, the report also says plaintiff has good and bad days. In addition, while the ALJ did consider the record evidence of plaintiff's mental impairments, he never compared that evidence with the evidence used by the VA in reaching their disability determination. Significantly, it is not clear whether plaintiff's VA disability determination is permanent or temporary. Either way, temporary or permanent, that particular finding could significantly impact the determination of whether to adopt the VA disability rating or not. The evidence considered by the ALJ was all generated <u>after</u> plaintiff's 100% VA disability rating had been made.

Other than what appears to be his initial comment about the VA rating, the ALJ did not again expressly consider the VA's rating of total disability. While several pages of the ALJ's decision discussed plaintiff's mental impairment, the discussion did not include any mention of the basis for the VA rating. The ALJ's decision must show meaningful consideration of the VA disability determination and provide specific reasons for giving the determination diminished weight. *Cf. Chambliss*, 269 F.3d at 523 (ALJ considered disability rating and provided specific, valid reasons for giving it diminished weight)*; Beltran v. Astrue*, No. 4-09-111, 2010 WL 519760 at *4 (S.D. Tex. Feb.9, 2010) (ALJ referenced benefits but did not discuss disability determination); *J.W.M. v. U.S. Comm'r Soc. Sec. Admin*, 2009 WL 3645105 at *2 (W.D. La. Oct. 30, 2009) (ALJ mentioned disability rating, noting it was not binding, but did not discuss disability determination); *McCown v. Astrue*, 2008 WL 706704 at *17 (S.D. Tex. March 14, 2008) (ALJ only acknowledged VA rating in decision, reciting that the rating was not binding and was inconsistent with objective

medical record); *Welch v. Barnhart*, 337 F.Supp.2d 929, 935-36 (S.D. Tex. 2004) (ALJ failed to discuss VA rating and totally disregarded rating).  Although there is no bright-line rule in the case law or regulations setting forth what level of explanation or discussion of valid reasons is necessary to be considered adequate, <u>some level of discussion and/or scrutiny of the VA disability determination is required</u>.  The critical factor here is that the ALJ could not conduct any meaningful analysis of whether the VA disability rating should or should not be given any weight when he did not have the basis of the disability determination before him.  In *Barraza v. Barnhart*, 2003 WL 1098841 (5th Cir. 2003), the Fifth Circuit found no error where the ALJ expressly considered the VA rating but declined to adopt it because it was not based entirely on medical evidence.  That case is instructive because it shows the ALJ looked at the specific evidence the VA used in reaching their disability determination.  In this case, the ALJ did not know the basis of the VA rating.  Consequently, he could not have given the substance of the VA rating any valid consideration.  The ALJ needed to go further and explain how the medical evidence he recited warranted giving the VA rating little or no weight.  Stated differently, the ALJ, if he determined the VA rating should not be adopted, needed to set out why the evidence used by the VA was not credible, something he could not do without knowing the basis of the VA's determination.  This Court cannot know what the ALJ would have done unless he discussed the VA rating and set out the reasons he found warranted rejecting the VA disability rating.  Considering Fifth Circuit precedent and case law developed in other courts, the undersigned finds the ALJ's failure to discuss the VA disability determination was reversible error.

V.
CONCLUSION

It may very well be that the VA 100% disability rating was based upon marginal evidence or

that there was a lack of evidence to even support the VA rating. It could also be, however, that the medical evidence clearly supported the VA rating at the time the rating was made and that the medical evidence is persuasive. Either way, the ALJ must adequately explain his valid reasons for the amount of weight, if any, he gives the rating. Until that rating and the reasons for it are before the defendant Commissioner, however, a meaningful analysis required by the case law and by the Secretary's regulations cannot be done.

## VI.
## RECOMMENDATION

It is the RECOMMENDATION of the undersigned United States Magistrate Judge to the United States District Judge that the decision of the defendant Commissioner finding plaintiff PAUL ALBO not disabled and not entitled to a period of disability benefits be REVERSED and the case REMANDED for further proceedings consistent with this Report and Recommendation.

## VII.
## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 11th day of September 2013.

_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

# * <u>NOTICE OF RIGHT TO OBJECT</u> *

Any party may object to these proposed findings, conclusions and recommendation.  In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line.  Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E).  **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date.  *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation."  Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties.  A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court.  *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).